**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 13-6781**

_____

NATHAN WEBB,

     Plaintiff - Appellant,

  v.

LYNNE BRAWN; JAMES F. SMITH; MARK VANHOUTEN,

     Defendants - Appellees.

_____

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, District Judge. (5:12-ct-03042-BO)

_____

Argued: March 19, 2014       Decided: April 28, 2014

_____

Before MOTZ, KING, and THACKER, Circuit Judges.

_____

Reversed by unpublished per curiam opinion.

_____

**ARGUED**: John Gunter, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Appellant. David Stebbins Coats, BAILEY & DIXON, LLP, Raleigh, North Carolina, for Appellees. **ON BRIEF**: Stephen L. Braga, Kevin Cope, Benjamin Wood, Third Year Law Student, Appellate Litigation Clinic, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Appellant. J.T. Crook, BAILEY & DIXON, LLP, Raleigh, North Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Nathan Webb brings this § 1983 action against police officers who searched his home without a warrant and in the face of his repeated refusals to permit the search. The district court granted the officers' motion to dismiss. For the reasons that follow, we reverse.

I.

In September 2009, Webb moved into a house with his girlfriend, Heather Upchurch, who co-signed the lease on the home.[1] On April 18, 2010, their daughter, S.W., was born. Six weeks later, on May 31, S.W. was taken to the hospital. The next day, she was diagnosed with multiple fractures to her ribs and legs, and child protective services removed her from her parents' custody. Following an argument with Webb, Upchurch decided to move out of the house and relinquished her house keys to Webb. She then took up residence with her family, approximately 30 miles away. A day or two later, Upchurch sent

---

[1] The background facts are undisputed. Given that the district court dismissed the complaint pursuant to Rule 12(b)(6) for failure to state a claim on which could be granted, we accept as true any disputed facts as alleged by Webb in his complaint. See Minor v. Bostwick Labs, Inc., 669 F.3d 428, 430 n.1 (4th Cir. 2012). All quotations are from the complaint or the public records attached to it.

a friend to Webb's house to retrieve her dog and most of her belongings.

Officer Lynne Brawn of the Town of Cary Police Department investigated Webb and Upchurch for their role in S.W.'s injuries. During a June 4 interview, Upchurch told Officer Brawn that Webb had a gun in his house and that he was a convicted felon. Upchurch also told Officer Brawn that she wanted to collect her remaining belongings from Webb's house. Later that day, Officer Brawn asked Webb if it would be all right if Upchurch went to collect the rest of her belongings from the home, and Webb said that that would be fine. Officer Brawn then informed Webb that Upchurch would be accompanied by uniformed officers. Webb protested, but Officer Brawn responded that Webb had no choice in the matter because this was the department's "procedure." Webb became angry and told Officer Brawn that he "didn't want police cars all over his property" and "didn't want his home to become a public spectacle in view of his neighbors."

Nevertheless, on the evening of June 4, Officers Mark VanHouten and James Smith drove Upchurch from her family's home to Webb's house to collect her belongings. The officers spoke with Officer Brawn, who informed them that there was a loaded weapon in the residence and that Webb was angry about the police going into the house. When Upchurch and the officers arrived at

3

the house, the doors were locked and Webb was not home. Upchurch telephoned Webb and placed him on speaker phone. Webb stated that he did not want police on his property and refused to come home. Webb "received multiple phone calls from . . . [the] officers asking him to come and open the doors" to the house so that Upchurch could retrieve her belongings. Webb continued to refuse, stating that "he did not want them on his property."

Officers Smith and VanHouten then "allowed Ms. Upchurch to force entry into the residence by breaking in through a rear door." The officers asked where Webb's gun was located and Upchurch told them it was in the bedroom closet. After Officer VanHouten "search[ed] the residence" and retrieved the weapon, Officer Smith called Officer Brawn to tell her that the weapon had been secured.

Officer Brawn then called Webb and "taunting him, sa[id] that his cooperation was no longer needed, and that they had gotten in[to]" the house by themselves. Webb was angry and said that he would file charges against the officers for unlawfully searching his home without a warrant. When Officer Brawn told Webb that Upchurch was legally able to enter the residence because her name was on the lease, Webb responded that Upchurch had chosen to move out, which was why she no longer had the keys to the house. Officer Brawn "laughed" and said that it didn't

4

matter now because the officers had found the gun and were obtaining a warrant for Webb's arrest. Officer Brawn then went to Webb's house to speak with the other officers and take possession of the weapon.

On June 5, Webb returned to his home to find it ransacked. He was distraught and attempted to commit suicide by taking sleeping pills. Upon his release from the hospital, he was arrested and charged as a felon in possession of a firearm. After a jury trial, he was acquitted of this charge. He was later convicted in state court of felony child abuse and is currently serving his sentence for that crime.

On February 27, 2012, Webb, proceeding pro se from prison, filed a verified complaint against Officers Brawn, VanHouten, and Smith pursuant to 42 U.S.C. § 1983. A year later, the district court granted the defendants' motion to dismiss for failure to state a claim on which relief could be granted. Webb subsequently filed a motion to alter or amend the judgment under Rule 59(e), which included a new exhibit with additional facts intended to show that the defendants knew that Upchurch did not live at his home on the date of the search. Before the district

court ruled on this motion, however, Webb noted an appeal. The district court subsequently denied the Rule 59(e) motion.[2]

## II.

At the outset, we must note what is, and what is not, at issue before us. In his pro-se complaint, Webb made the detailed factual allegations set forth above, and alleged that the officers violated his Fourth, Fifth, Eighth, and Fourteenth Amendment rights. He also asserted various state common law tort claims.

The officers moved to dismiss the complaint in its entirety and submitted a lengthy memorandum in support of that motion. In response to Webb's "common law tort claims," the officers asserted qualified immunity. Importantly, the officers did not assert qualified immunity with respect to the federal constitutional claims.

The district court dismissed the entire complaint. In doing so, the court did not address qualified immunity. Rather, the court relied on a state appellate court opinion in a criminal case involving the same parties (but focusing on

---

[2] In his 59(e) motion, Webb included additional facts that were not in his complaint, e.g., Upchurch did not contribute to rent or utilities payments and her identification card did not list the house as her residence. We need not and do not consider these facts.

6

different facts) to conclude that Upchurch was Webb's cotenant at the time of the search and that her consent to the search was voluntarily given.  The court further ruled that Webb's contemporaneous objection to the search via telephone was ineffective because Webb was not physically present at the house at the time of the search.  Finding the Fourth Amendment claim to be the "core" claim in Webb's complaint, the district court dismissed all of Webb's other claims as frivolous.

On appeal, Webb asserts only that the district court erred in dismissing his Fourth Amendment claim.  The officers contend to the contrary, but in doing so, they do not rely on qualified immunity.  With this understanding of the issue before us, we turn to the only question presented on appeal:  did the district court err in dismissing Webb's Fourth Amendment claim?


III.

We review an order granting a Rule 12(b)(6) motion to dismiss de novo, accepting as true the facts alleged in the complaint and drawing all reasonable inferences in favor of the plaintiff.  Ridpath v. Bd. of Governors, Marshall Univ., 447 F.3d 292, 306 (4th Cir. 2006).  We consider the complaint in its entirety, including documents incorporated into the complaint by reference.  We can take judicial notice of matters in the public record.  Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180

7

(4th Cir. 2009).  We may also consider documents attached to the motion to dismiss, so long as the documents "are integral to the complaint and authentic."  Id.

The Fourth Amendment generally prohibits law enforcement officers from entering a person's home without a warrant.  See U.S. Const. amend. IV; Payton v. New York, 445 U.S. 573, 585 (1980).  But "[t]his prohibition does not apply . . . to situations in which voluntary consent has been obtained, either from the individual whose property is searched or from a third party who possesses common authority over the premises." Illinois v. Rodriguez, 497 U.S. 177, 181 (1990) (citations omitted).  "'Common authority' . . . is not merely a question of property interest.  Rather, it requires evidence of 'mutual use' by one having 'joint access or control for most purposes.'" United States v. Buckner, 473 F.3d 551, 554 (4th Cir. 2007) (quoting United States v. Matlock, 415 U.S. 164, 171 n.7 (1974)).

Courts assess the validity of this consent based on the "totality of the circumstances."  Trulock v. Freeh, 275 F.3d 391, 401 (4th Cir. 2001).[3]  Relevant factors include whether the

---

[3] Even if a third party lacks the actual authority to consent to a search, police officers do not violate the Constitution as long as the third party "had [the] apparent authority to consent." Buckner, 473 F.3d at 555.  The apparent authority rule, however, applies only to officers' mistakes of (Continued)

individual providing consent resided at the home, whether access to the property to be searched was secured, and whether the third party possessed the means to access the property. Cf. Buckner, 473 F.3d at 554. The fact that an individual is listed as an occupant of the property is not necessarily dispositive. Compare United States v. Brown, 328 F.3d 352, 356 (7th Cir. 2003) (holding that being named on the lease did not by itself establish authority to consent), with United States v. Backus, 349 F.3d 1298, 1299-1300, 1304 (11th Cir. 2003) (holding that spouse who jointly owned but no longer occupied marital property had authority to consent).

Given these governing principles, Webb's complaint clearly alleges facts sufficient to support a plausible claim that Upchurch did not possess authority to consent to the search. His complaint alleges that: (1) he and Upchurch had broken up and Upchurch no longer resided at the house, (2) Upchurch did not possess a key to the house, (3) the doors to the house were locked when Upchurch arrived with the law enforcement officers,

---

fact, not mistakes of law. See Moore v. Andreno, 505 F.3d 203, 209 (2d Cir. 2007). The apparent authority rule would not seem to apply here given that at this juncture, it is undisputed that the officers knew the relevant facts surrounding Upchurch's consent to the search, i.e., that Upchurch had moved out of the house and that she no longer possessed the keys to the residence. As such, any mistake the officers made about Upchurch's authority to consent would have been a mistake of law.

9

and (4) Upchurch and the officers gained access only by breaking into the house.

Contrary to the officers' assertions, the public records properly attached to the complaint, including Officer Brawn's police report, do not contradict Webb's allegations. Rather, Officer Brawn's report corroborates Webb's account. For Officer Brawn states in her police report that at the time of the search, Upchurch was no longer residing at the house, no longer possessed a key to the residence, and that Webb objected to the officers entering his property. Moreover, Officer Brawn's report further states that when Upchurch arrived with the police "the door was locked and Mr. Webb was not home," but that Upchurch nevertheless "was able to get into the house to get her things." In view of these facts, a reasonable jury could infer that Upchurch, and the officers accompanying her, broke into Webb's home. Accordingly, Webb has alleged a plausible Fourth Amendment claim. Whether Webb can prove it, particularly in the face of any defenses the officers may raise, is a different story.

IV.

For the reasons above, the judgment of the district court is reversed to the extent it dismisses Webb's Fourth Amendment

10

claim for failure to state a claim on which relief may be granted.

REVERSED