Affirmed by unpublished PER CURIAM opinion. Judge WYNN wrote a dissenting opinion.
Unpublished opinions are not binding precedent in this circuit.
PER CURIAM:
Ronnie Gerald Belt (“Appellant”) claims West Virginia State Police troopers ran afoul of the Fourth Amendment when they entered his home at the invitation of his eleven-year-old son. Following this entry, Appellant provided the troopers information they then used to obtain a search warrant. The search revealed various items, including items used for manufacturing methamphetamine. As a result, Appellant was charged with possession of material used in the manufacture of methamphetamine and maintaining a drug involved premises in violation of 21 U.S.C. §§ 843 and 856, respectively.
Asserting the evidence seized from his home and the statements he made to the troopers were fruits of the unconstitutional entry of his home, Appellant moved to suppress both. The district court denied *747 the motion to suppress, concluding that the troopers’ entry did not offend the Fourth Amendment.
We affirm the district court’s denial of Appellant’s motion to suppress. In doing so, we assume the troopers violated the Fourth Amendment when they entered Appellant’s home but hold that Appellant’s statements were sufficiently attenuated from the constitutional violation such that suppression is not warranted.
I.
The facts underlying this appeal are undisputed. In early April 2013, West Virginia State Police Sergeant Gerald D. Dornburg received a phone call from an unidentified woman. This anonymous tipster told Sergeant Dornburg that methamphetamine was being produced or used at Appellant’s home and that a child was present in the home. In response, Sergeant Dornburg contacted Troopers Steven Blake and S.C. Baier. The three troopers intended to travel to Appellant’s home and conduct a “knock and talk,” hoping to find Appellant at home and to engage him in conversation regarding the information provided by the tipster.[1] J.A. 35.[2]
When the trio of troopers arrived at Appellant’s home, they noticed a young boy outside near a four-wheeler off to the side of the home. Sergeant Dornburg estimated that the boy appeared to be ten to twelve years old. The troopers, all of whom were in uniform, approached the home. One of the troopers asked the boy whether the home was Appellant’s; the boy replied that it was and that he was Appellant’s son. The boy then told the troopers that his father was inside and proceeded to invite the troopers into the home through the side door connected to the kitchen. The troopers followed the boy into Appellant’s home.
Once inside the home, Sergeant Dorn-burg waited alone in the kitchen while Troopers Blake and Baier went to speak with Appellant. The two troopers, led by the boy, found Appellant in the living room of his home. Once there, they informed Appellant about the anonymous call received earlier in the day. Then one of the troopers asked Appellant if he would consent to a search of the home. He refused to consent and informed the troopers they were going to need a warrant. In response, one of the troopers asked Appellant, “What are you worried about? What are you concerned with?” J.A. 48. Appellant replied that there were “two jars upstairs that had been used for something.” Id. Appellant explained that the jars contained “[tjhat stuff that everybody’s making.” Id. at 49.
Considering the anonymous tipster’s information and Appellant’s statements and criminal history, the troopers believed Appellant was referring to methamphetamine. With that, the troopers secured the home. Trooper Blake left to secure a warrant; Sergeant Dornburg, Trooper Baier, Appellant, and the boy stayed behind in Appellant’s kitchen.
Based on the information provided by Trooper Blake, the magistrate court issued a search warrant. The resulting search of Appellant’s home turned up firearms and *748 various items used in the shake-and-bake method of manufacturing methamphetamine. The troopers arrested Appellant, who was subsequently charged with possession of material used in the manufacture of methamphetamine and maintaining a drug involved premises in violation of 21 U.S.C. §§ 843 and 856, respectively.
Appellant moved to suppress the evidence seized from his home and the statements he made to the troopers for several reasons. Among these reasons and pertinent on appeal, Appellant claimed the evidence and statements were tainted by the initial unconstitutional entry of his home. The initial entry was unconstitutional, Appellant argued, because his son did not have apparent authority to consent to the troopers’ entry of the home.
The district court disagreed and found apparent authority existed under the circumstances. The district court also noted that, even if the troopers violated the Fourth Amendment, “the initial entry into the home [was] far too attenuated to the ultimate discovery of the evidence.” J.A. 111. Accordingly, the district court denied Appellant’s motion to suppress.
Thereafter, Appellant pled guilty to possession of material used in the manufacture of methamphetamine. However, he reserved his right to appeal the district court’s denial of his motion to suppress. The district court entered its judgment on February 21, 2014. Appellant timely appealed.
II.
Our review of the district court’s ruling on Appellant’s motion to suppress is twofold. We review the district court’s conclusions of law de novo; we review the district court’s factual findings for clear error. See United States v. Buckner, 473 F.3d 551, 553 (4th Cir.2007).
II.
Appellant argues that the troopers violated the Fourth Amendment by entering his home. He contends that the troopers could not reasonably believe the boy had authority to invite them into the home. Accordingly, Appellant asserts his statements to the troopers, which were used to secure a warrant and led to the discovery of incriminating evidence, were tainted by the Fourth Amendment violation; therefore, the statements and physical evidence should be suppressed.
Appellant asks us to define the contours of third-party consent and to decide when government agents can reasonably conclude that a minor has the apparent authority to extend an invitation to enter a home. We do not need to reach this issue, however, because this case presents a more narrow ground on which we can affirm the district court’s denial of Appellant’s motion to suppress. The attenuation doctrine compels the outcome of this case.
Although evidence obtained as a result of an unconstitutional search is suppressed under most circumstances, the attenuation doctrine allows us to assume a constitutional violation occurred and decide instead whether an intervening act dispelled the taint of the violation. See United States v. Seidman, 156 F.3d 542, 548 (4th Cir.1998) (“[A]n intervening ‘act of free will [may] purge the primary taint of the unlawful invasion.’ ” (quoting Wong Sun v. United States, 371 U.S. 471, 486, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963))). If the taint of the violation is dispelled, suppression is not available. The Government bears the burden of establishing admissibility. See id. Our analysis of whether an act is sufficiently intervening focuses on “(1) the amount of time between the illegal action and the acquisition of the evidence; (2) the presence of intervening circumstances; *749 and (3) the purpose and flagrancy of the official misconduct.” Id. Our analysis is guided by a “careful sifting of the unique facts and circumstances of the case.” Id. (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 233, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)) (internal quotation marks omitted).
A.
Assuming the troopers ran afoul of the Fourth Amendment and upon review of the circumstances of this case, we conclude the taint of any Fourth Amendment violation was dispelled. Accordingly, Appellant’s statements and the physical evidence seized form Appellant’s home are not subject to suppression.
1.
Time—the first Seidman factor—is not on the Government’s side. Upon entering the home, Appellant’s son led Troopers Blake and Baier directly to his father. And upon finding Appellant, Troopers Blake and Baier began their conversation with Appellant. Little time passed between when the troopers entered Appellant’s home and when they found and spoke with Appellant. However, a single factor weighing against attenuation does not end our inquiry. See, e.g., Seidman, 156 F.3d at 549 (noting this inquiry “does not require that each of the factors set forth be resolved in favor of the Government” (internal quotation marks omitted)).
2.
Intervening circumstances—the second Seidman factor—weighs in favor of finding the, statements were attenuated from the entry of the home. The circumstances here are similar to those in Seid-man, where this factor weighed in favor of a finding of attenuation. In Seidman, “[ajlmost immediately after [the government agent] entered the home, any taint arising from [his] entry was attenuated by [appellant’s] consent to the conversation.” 156 F.3d at 549. The same is true here. Rather than asking the troopers to leave, Appellant willingly engaged in a conversation with the officers about the jars upstairs in his house that contained “[t]hat stuff that everybody’s making.” J.A. 49.
The differences between this case and Seidman do not make Seidman—as the dissent puts it—“manifestly distinguishable.” The factual fit between this case and Seidman may not be exact, but it is sufficient. Appellant did not close' the door behind the troopers and motion for them to join him as had Seidman. Importantly, however, he did not ask the troopers to leave when they arrived in his living room. Instead, after reminding the troopers they would need a warrant to search the house, Appellant continued to converse with the troopers, willingly engaging in the conversation. The consensual conversation with the troopers, the willingness to engage the troopers—an independent act of free will—severed Appellant’s statements from the troopers’ initial entry into the home. And thus any taint that may have existed was dispelled.
3.
Purpose and flagrancy—constituting the third Seidman factor—also weigh in favor of finding the statements were attenuated from the entry of the home. The troopers did not act with a flagrant disregard of the law. Cf. Brown v. Illinois, 422 U.S. 590, 593, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) (officers broke into apartment and held individual at gunpoint); Wong Sun, 371 U.S. at 474, 83 S.Ct. 407 (officers broke open a door and placed individual under arrest and in handcuffs); see also Seidman, 156 F.3d at 550 *750 (discussing Wong Sun and Brown in the context of this factor).
Although we certainly question the choice to simply follow Appellant’s eleven-year-old son into the home, this choice does not rise to a flagrant disregard of the law. Nothing indicates the troopers acted with an improper purpose. The troopers intended to conduct a “knock and talk” until Appellant’s son invited them into the home, and after Appellant refused to permit the troopers to search his home, one trooper merely asked what worried Appellant. Appellant could have refused to answer this question. The fact that Appellant felt comfortable refusing consent to search the home reflects an absence of intimidation in this scenario. And although the troopers asked a few questions after being denied access to search the home, the voluntary nature of the discussion between Appellant and the troopers did not change. The circumstances here are not as extreme as those presented in Wong Sun and .Brown; just as in Seid-man, “[t]he degree of coercion resulting from the police officers’ illegal acts in Wong Sun and Brown ... simply was not present here.” Seidman, 156 F.3d at 550.
Discussing the purpose and flagrancy of the troopers’ actions, the dissent focuses on what the troopers could have done under the circumstances. To be sure, the troopers’ conduct here leaves much to be desired. But this is not the focus of our inquiry, despite our belief that the troopers should have proceeded with greater caution and respect for Appellant’s privacy. The dissent offers reasonable alternatives — advice troopers should heed in the future — but nothing here suggests that the troopers here intimidated or coerced Appellant. In fact, Appellant conceded as much at oral argument.[3] Under these circumstances, this factor weighs against suppression.
Considering all of these factors, we conclude that the district court did not err by finding Appellant’s statements were attenuated from the entry of his home. There may have been little time between the entry of the home and the conversation between Appellant and the troopers, but the circumstances here and the actions of the troopers do not reveal any perniciousness. If the entry of Appellant’s home was poisonous, Appellant provided the antidote when he engaged the troopers in conversation.
B.
Although we do not decide whether the troopers violated the Fourth Amendment, we digress to express our concern with the actions of the troopers in this case. On brief and at argument, the Government was unwavering in its support of the district court’s conclusion that the troopers could rely on the apparent authority of Appellant’s eleven-year-old son when they followed the boy into the home.
Limited information should limit the actions of government agents. When the apparent authority of a minor is at issue, the touchstone of the apparent authority inquiry is whether a reasonable person would believe the child could invite others into the home. Cf. United States v. Cazun, 62 Fed.Appx. 441, 442 (4th Cir.2003) (concluding apparent authority turns on “whether the facts available ... at the time would justify a reasonable person to believe the consenting party had authority to allow *751 entry”)- The troopers in this case had very little information; they only knew the young boy they encountered outside was Appellant’s son and that they were at Appellant’s home.
But our cause for concern does not end with the limited information available to the troopers. Before inviting the troopers into the home, Appellant’s son told them his father was inside. Upon encountering a child who is standing outside a home and who says a parent is inside, any reasonable person whose purpose was to speak with the adult of the house would not simply barge into the home. For this trio of troopers, however, these facts were no reason to hesitate. To the contrary, they simply took this fortuitous set of circumstances as an open invitation to enter the home. We are inclined to believe a reasonable officer, knowing the stranger he has come to visit is home, would ask the stranger’s child to fetch the parent, waiting to enter until an adult extended an invitation.
IV.
We conclude that the district court properly denied Appellant’s motion to suppress because the statements he made to the troopers were attenuated from the presumed unconstitutional entry of his home.

AFFIRMED.

. Prior to going to Appellant's home, the troopers obtained Appellant's criminal history. Appellant was, among other things, previously convicted for making illegal purchases of ephedrine or a like substance. Ephedrine is a chemical that can be used to produce methamphetamine. See, e.g., Zhenli Ye Gon v. Holder, 992 F.Supp.2d 637, 658 (W.D.Va. 2014).

. Citations to the “J.A.” refer to the Joint Appendix filed by the parties in this appeal.

. "We can't argue that it wasn’t a voluntary process. [The troopers] didn’t berate [Appellant], they didn’t coerce anything out of him.” Oral Argument at 6:09, United States v. Belt, No. 14-4160, available at http://coop.ca4. uscourts.gov/O Aarchive/mp3/l 4-4160-20150129.mp3.