**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 24-4000

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

HECTOR LUCIANO PEREZ VALENZUELA,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Richard E. Myers, II, Chief District Judge.  (5:20-cr-00012-M-1)

Submitted:  September 25, 2025                    Decided:  February 19, 2026

Before BENJAMIN, Circuit Judge, FLOYD, Senior Circuit Judge, and Patricia Tolliver GILES, United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ON BRIEF:**  Raymond C. Tarlton, TARLTON LAW PLLC, Raleigh, North Carolina, for Appellant.  Michael F. Easley, Jr., United States Attorney, David A. Bragdon, Assistant United States Attorney, Katherine S. Englander, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Hector Perez Valenzuela was convicted by a jury of knowingly and intentionally distributing and possessing with the intent to distribute fentanyl and aiding and abetting the same.  The charges arose after DEA Task Force Officer Mark Thomas initiated a traffic stop in Saint Charles County, Missouri,[*] of a vehicle in which Perez Valenzuela was the passenger on November 8, 2019.  During the traffic stop, Officer Thomas obtained the driver's consent to search the vehicle and conduct a K-9 sniff.  The search resulted in the discovery of seven brick-type packages and two sealed plastic bags containing thousands of small blue pills containing what forensic experts would later identify as fentanyl.  Perez Valenzuela moved to suppress the evidence from the search, arguing that the search was unlawful.  The district court denied the motion, and a jury subsequently convicted Perez Valenzuela of the charges.  On appeal, Perez Valenzuela contends that the court erred in denying the motion to suppress because (1) the driver's consent was involuntary and invalid because it was given when the driver was seized; (2) the stop had been impermissibly prolonged; and (3) Officer Thomas did not have reasonable suspicion to prolong the stop to conduct a dog sniff.  We affirm.

"In considering the appeal of a denial of a motion to suppress, we review the district court's conclusions de novo and its factual findings for clear error."  *United States v. Slocumb*, 804 F.3d 677, 681 (4th Cir. 2015).  In reviewing a suppression motion denied by

---

[*] The government alleged and a jury later determined Perez Valenzuela obtained these narcotics in Fayetteville, North Carolina, rendering jurisdiction in the Eastern District of North Carolina proper under Federal Rule of Criminal Procedure 18.

the district court, this Court construes evidence in the light most favorable to the government. *United States v. Palmer*, 820 F.3d 640, 648 (4th Cir. 2016).

"A traffic stop constitutes a seizure under the Fourth Amendment and is thus subject to a reasonableness requirement." *Perez*, 30 F.4th at 374 (citation modified). Accordingly, this Court has confirmed that the Fourth Amendment protects individuals from unreasonably prolonged stops. *Id.* at 375. However, a traffic stop may be extended for a search if consent is given before the conclusion of the stop. *Palmer*, 820 F.3d at 649–50. "Consent to search is valid if it is (1) knowing and voluntary and (2) given by one with authority to consent." *United States v. Buckner*, 473 F.3d 551, 554 (4th Cir. 2007) (citation modified). In assessing voluntariness of the consent, we examine the totality of the circumstances, including "the characteristics of the accused," like his education and intelligence, and the conditions surrounding consent, such as "the number of officers present" and the location and duration of the stop. *United States v. Lattimore*, 87 F.3d 647, 650 (4th Cir. 1996). "Consent given while in custody may still be voluntary." *United States v. Boone*, 245 F.3d 352, 362 (4th Cir. 2001); *see also Lattimore*, 87 F.3d at 651 (affirming voluntariness of oral consent when the Defendant was physically inside an officer's patrol vehicle).

Here, approximately five minutes into the stop, Officer Thomas asked the driver, Kittisack Vorana, for his consent to search the vehicle. Vorana replied, "Go ahead, I see you have a dog, you should use the dog too." J.A. 71; J.A. 155. Right after that exchange, Thomas asked Perez Valenzuela for his consent, and he also agreed. These exchanges took place during Thomas' questioning and during routine conversation. Perez Valenzuela and

3

Vorana both understood English. Additionally, Thomas was the only officer present when he asked for their consent, and neither Vorana nor Perez Valenzuela were physically inside the officer's vehicle. Under the totality of circumstances, these facts show that the consent was voluntary, and therefore valid. *See Buckner*, 473 F.3d at 554. Officer Thomas' subsequent search of vehicle and K-9 sniff did not violate Perez Valenzuela's constitutional rights.

Furthermore, Officer Thomas did not impermissibly prolong the stop prior to asking for consent. The Supreme Court has explained that the "[a]uthority for the [traffic stop] seizure . . . ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). Here, Thomas had not unlawfully prolonged the stop when Vorana and Perez Valenzuela gave Thomas consent to search the vehicle because he asked for consent while he processed the traffic citation. Thomas asked basic questions when he was obtaining documents from Vorana at the vehicle. Thomas then asked Vorana to exit the vehicle while he conducted a records check. Thomas continued talking with Vorana during the records check and asked for his consent to search the vehicle while working on his in-car computer, which was necessary to the mission of the traffic stop. Thomas estimated that his request for consent occurred approximately five minutes after he initially stopped the vehicle. There is no indication that the request for consent occurred after Thomas completed tasks tied to the traffic violation or evidence that Thomas should have reasonably completed his tasks within five to seven minutes. *See id.* Given these conclusions, we need not determine whether Thomas had reasonable suspicion to extend the stop.

4

Accordingly, because the district court did not err in denying Perez Valenzuela's motion to suppress, we affirm the district court's judgment.

*AFFIRMED*