# IN THE COURT OF APPEALS OF IOWA

No. 13-1259
Filed March 11, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JEROME McDOWELL,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Marshall County, Kim M. Riley, District Associate Judge.

Defendant appeals his convictions and sentences for operating while intoxicated, third offense, and driving while his license was revoked.  **AFFIRMED.**

Melissa A. Nine of Nine Law Office, Marshalltown, for appellant.

Thomas J. Miller, Attorney General, Alexandra Link, Assistant Attorney General, Jennifer Miller, County Attorney, and Paul Crawford, Assistant County Attorney, for appellee.

Considered by Vaitheswaran, P.J., Mullins, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**MAHAN, S.J.**

Defendant Jerome McDowell appeals his convictions and sentences for operating while intoxicated (OWI), third offense, and driving while his license was revoked. Upon our de novo review, we conclude the district court properly denied McDowell's motion to suppress. McDowell did not preserve error on his claim regarding the habitual offender enhancement. We determine the court did not abuse its discretion in sentencing him. We affirm his convictions and sentences.

## I. Background Facts & Proceedings.

At about 10:40 p.m. on February 15, 2013, the Marshall County Communications Center received a 911 call from a woman, O.D., asking for assistance because Jerome McDowell would not leave her home. A dispatcher notified officers Juan Tejada and Justin Allen of the Marshalltown Police Department there had been a disturbance, stating "Troy McDowell" would not leave the woman's home. Officer Tejada was acquainted with Jerome McDowell and assumed the dispatcher was referring to him. The officer was also aware McDowell had a green Cadillac. As the officers were driving to O.D.'s home they saw McDowell driving in the opposite direction in a green Cadillac.

The officers turned on their lights to stop McDowell's vehicle. Very shortly thereafter they got a report from the dispatcher that McDowell had left the woman's home and she did not need assistance. The officers continued with the stop of McDowell's vehicle. When they approached McDowell, they noticed he had a strong odor of alcohol, and bloodshot, watery eyes. McDowell was

arrested for driving while revoked and taken to the police station. A breath test showed McDowell had an alcohol level of .129, over the legal limit.

McDowell was charged with OWI, third offense, in violation of Iowa Code section 321J.2 (2013), a class "D" felony, and driving while his license was revoked, in violation of section 321J.21, an aggravated misdemeanor. The State additionally alleged McDowell was a habitual offender. He filed a motion to suppress, claiming the officers improperly stopped his vehicle.

A suppression hearing was held April 29, 2013. Officer Tejada testified that a month or two previously, while working on an unrelated case, he came into contact with McDowell and became aware he did not have a valid driver's license. When questioned about continuing with the traffic stop after receiving notice O.D. no longer required assistance, he testified that once officers turn on their lights to initiate a traffic stop they always continue with the traffic stop. He noted they were still investigating a possible crime, such as trespass. Officer Tejada additionally stated that when a disturbance had been called in the officers usually made contact with the aggressor to tell that person not to go back to the scene of the disturbance for a period of time in order to give the participants time to cool off.

Officer Allen testified that between the time he turned on his lights and then made the stop, the dispatcher advised "the reporting party called back and said everything was okay." He stated the officers continued with the stop because they had already activated the lights and they believed the driver had been involved in a disturbance. Officer Allen stated the disturbance could have constituted an assault, a trespass, or "anything, really."

The district court denied the motion to suppress. The court found that due to the 911 call the officers had a reasonable suspicion a crime had just been committed, and they were "acting in the heat of the moment to investigate an ongoing situation." The court found the purpose of a *Terry* stop is to investigate a crime, and that was what the officers did. "The purpose of the stop was to determine the ambiguity as to whether the crime of trespass or some other crime had occurred and to act accordingly." The court concluded the stop did not violate McDowell's Fourth Amendment rights.

McDowell agreed to waive his right to a jury trial. The court found him guilty of OWI, third offense, and driving while his license was revoked. The court determined he was a habitual offender. McDowell was sentenced to a term of imprisonment not to exceed fifteen years. He now appeals.

## II. Motion to Suppress.

McDowell claims the district court should have granted his motion to suppress. He contends the stop was unconstitutional under the federal and Iowa Constitutions because the officers did not have specific and articulable grounds to stop his vehicle.[1] He asserts that if the officers believed he had committed the offense of trespass, a simple misdemeanor, it was a past crime because he was no longer at the woman's apartment. He also states the officers should have been looking for "Troy McDowell," based on the information received from the dispatcher.

---

[1] McDowell has not argued for a different approach under the Iowa Constitution, and therefore, we will apply the federal standards in this case. *See State v. Bruegger*, 773 N.W.2d 862, 883 (Iowa 2009).

When a defendant challenges a search on constitutional grounds, our review is de novo. *State v. Pals*, 805 N.W.2d 767, 771 (Iowa 2011). We conduct an independent evaluation of the totality of circumstances as shown by the entire record. *Id.* We give deference to the district court's factual findings based on the court's opportunity to observe the witnesses, but are not bound by such findings. *Id.*

The Fourth Amendment protects against unreasonable searches and seizures. *State v. Lloyd*, 701 N.W.2d 678, 680 (Iowa 2005). "If evidence is obtained in violation of the Fourth Amendment, it is inadmissible regardless of its relevancy or probative value." *Id.* Under *Terry v. Ohio*, 392 U.S. 1, 30 (1968), an officer may stop a vehicle if the officer reasonably believes, in light of his experience, that criminal activity may be afoot. An officer does not need to be absolutely certain a crime has been committed. *See Terry*, 392 U.S. at 27. "[I]n determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Id.*

The stop of a vehicle based on reasonable suspicion under *Terry* has been described by the Iowa Supreme Court as an "investigatory stop." *State v. Tyler*, 830 N.W.2d 288, 298 (Iowa 2013). "The principal function of an investigatory stop is to resolve the ambiguity as to whether criminal activity is afoot." *State v. Vance*, 790 N.W.2d 775, 780 (Iowa 2010). Our supreme court has stated:

Whether reasonable suspicion exists for an investigatory stop must be determined in light of the totality of the circumstances confronting a police officer, including all information available to the officer at the time the decision to stop is made. The circumstances under which the officer acted must be viewed "through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training."

*Id.* at 781 (quoting *State v. Kreps*, 650 N.W.2d 636, 642 (Iowa 2002) (citations omitted)).

The evidence in this case shows the dispatcher alerted the officers to a "disturbance."[2] The dispatcher told them a female reported "Troy McDowell" would not leave her house and gave them an address. Based on this report, Officer Tejada believed the person was Jerome McDowell, who he knew. Neither officer was aware of anyone named "Troy McDowell." Officer Tejada also knew McDowell drove a green Cadillac. As the officers were driving to the address given to them as the scene of a disturbance, they saw McDowell driving a green Cadillac coming toward them from the area of the woman's home and made the decision to stop the vehicle. The fact that he had the same last name as the person reported to them as being involved in a disturbance and that he was driving in a direction away from where the disturbance had been reported supported their reasonable suspicion that McDowell may have been involved in criminal activity. *See State v. Scott*, 518 N.W.2d 347, 349 (Iowa 1994) (noting there was reasonable cause to stop a vehicle observed leaving an area where gunshots were fired).

---

[2] McDowell raises some arguments based on the 911 call to the dispatcher. The officers' information about the incident came from the dispatcher, however, not from the 911 call itself.

Between the time the officers turned on their lights to stop McDowell and when the stop was accomplished, they received further communication from the dispatcher that O.D. stated the person had left, she had locked her doors, and everything was fine. The officers testified they continued with the stop because they were still investigating a potential crime. They had received information of a "disturbance" and that "Troy McDowell," who they correctly surmised was Jerome McDowell, would not leave a woman's home. Officer Allen testified a "disturbance has turned into an assault, a trespass. It can turn into anything, really." We conclude the information the suspect had left O.D.'s home did not eliminate the officers' reasonable suspicion McDowell had engaged in criminal activity.[3]

McDowell contends the officers did not know that a crime had occurred and states they guessed or speculated he had been involved in a crime. As noted above, the purpose of a *Terry* stop is to *investigate* a possible crime.

---

[3] Although the issue was not addressed by the district court, in our de novo review, we note that in addition to the officers' reasonable suspicion McDowell had been involved in a disturbance, which could have constituted an assault, trespass, or another crime, Officer Tejada knew that one or two months previously McDowell did not have a valid driver's license. We believe this circumstance also provided the officers with a reasonable suspicion McDowell may have been driving while his license was suspended or revoked, in violation of section 321J.21, and could possibly provide a basis for the traffic stop. *See Vance*, 790 N.W.2d at 781 (stating that if an officer "had an articulable and reasonable suspicion the driver of the vehicle did not have a valid driver's license, he was entitled to stop the vehicle and briefly detain the driver to investigate his or her driver's license status"). The factor of time is not conclusive, and the issue of staleness is resolved by considering all of the factors present in the particular situation. *See State v. Paterno*, 309 N.W.2d 420, 423 (Iowa 1981); *State v. Gillespie*, 503 N.W.2d 612, 616 (Iowa Ct. App. 1993). "[W]e do not evaluate reasonable suspicion based on each circumstance individually, but determine the existence of reasonable suspicion by considering all of the circumstances together." *State v. McIver*, ___ N.W.2d ___,.___, 2015 WL 115753, at * 3 (Iowa 2015).

*Tyler*, 830 N.W.2d at 298. In such a stop officers expect to learn "additional relevant information concerning suspected criminal activity." *Id.*

> The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

*Adams v. Williams*, 407 U.S. 143, 145-46 (1972) (citations omitted). Here, the officers received information a person with the last name of McDowell had been involved in a disturbance and could properly stop McDowell to investigate whether he was the person involved and the nature of the disturbance. We determine they had a reasonable suspicion sufficient for an investigatory stop, even if their investigation had ultimately revealed wholly lawful conduct. *See Vance*, 790 N.W.2d at 780*.*

McDowell also argues that even if a crime occurred, it was in the nature of a simple misdemeanor, like trespass under section 716.8, and would have been a "past crime" because he had left O.D.'s home. Although McDowell raises this issue, which is based upon *United States v. Hensley*, 469 U.S. 221, 229 (1985), he also states in his appellate brief, "McDowell agrees with the district associate court insofar as a *Hensley* analysis is not warranted."[4] We agree an analysis

---

[4] The United States Supreme Court has held officers may stop a vehicle if they have reasonable suspicion a person was involved in a completed felony. *Hensley*, 469 U.S. at 229. As the Iowa Supreme Court has noted, "Federal courts are divided on the issue of whether the Fourth Amendment per se prohibits police from stopping a vehicle based only on reasonable suspicion of a completed misdemeanor or civil infraction." *Pals*, 805 N.W.2d at 774.

under *Hensley* is not necessary in this case. Furthermore, we note that at the time the officers stopped McDowell, it was not clear whether a simple misdemeanor offense or a more serious crime had been committed, or possibly no offense had been committed at all. Also, because it was not clear what, if any, offense had been committed, it was also unclear whether the offense was completed at the time of the stop. Both officers stated that in domestic disturbances, a party may return to the scene and the situation could escalate.

Upon our de novo review, we conclude the district court properly denied McDowell's motion to suppress.

### III. Habitual Offender.

In a pro se brief, McDowell claims he was entitled to a jury trial on the issue of whether he was a habitual offender. He asserts the court should have engaged in a colloquy with him to determine whether he validly waived his right to a jury trial on this issue. The record shows McDowell waived his right to a jury trial in a written document and in person during a colloquy with the court. He never sought to revoke the waiver of his right to a jury trial. To the extent McDowell may be arguing he was entitled to a separate colloquy on the issue of the habitual offender enhancement, that issue was never raised before the district court, nor addressed by the court. We conclude McDowell has not preserved this issue for our review. *See State v. Jefferson*, 574 N.W.2d 268, 278 (Iowa 1997).

**IV. Sentencing.**

In his pro se brief, McDowell also claims he was given an illegal sentence. He states his underlying problem is substance abuse, and the court should not have given him a prison term for being a substance abuser.

Although McDowell raises this argument within the context of a claim of an illegal sentence, he is essentially arguing the court abused its discretion by sentencing him to a term in prison rather than placing him in a substance abuse treatment program. "We will not vacate a sentence on appeal 'unless the defendant demonstrates an abuse of trial court discretion or a defect in the sentencing procedure such as the trial court's consideration of impermissible factors.'" *State v. Lovell*, 857 N.W.2d 241, 242-43 (Iowa 2014) (citation omitted). Based on McDowell's lengthy criminal history and other factors, we conclude the court did not abuse its discretion in sentencing him to fifteen years in prison for the offenses involved here. Contrary to McDowell's assertion, he was not sentenced to prison merely for being a substance abuser.

We affirm McDowell's convictions and sentences for OWI, third offense, and driving while his license was revoked.

**AFFIRMED.**