**STATE of Iowa, Appellant,**

·v.

**John A. SCOTT, Appellee.**

No. 93–1468.

Supreme Court of Iowa.

June 22, 1994.

Bonnie J. Campbell, Atty. Gen., Richard J. Bennett, Asst. Atty. Gen., John P. Sarcone, County Atty., and Gregory Brandt, Asst. County Atty., for appellant.

F. John Spellman, Des Moines, for appellee.

Considered by HARRIS, P.J., and LARSON, NEUMAN, SNELL, and ANDREASEN, JJ.

ANDREASEN, Justice.

John Scott was charged with the crime of possession of a controlled substance, marijuana. He filed a motion to suppress evidence seized by a police officer from his pocket during a pat-down search. Iowa R.Crim.P. 11(1). The district court granted his motion finding that the scope of the pat-down search went beyond that permitted under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and that the officer's inquiry as to what was in his pocket at the time of the search constituted "custodial interrogation" prohibited by the doctrine enunciated in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We granted the State's request for discretionary review. Iowa R.Crim.P. 11(2). We reverse the ruling and remand the case for trial.

## I. *Background.*

On May 17, 1993, at approximately 7:30 p.m., Scott was a passenger in an automobile that was stopped by police officer Larina Blad in Des Moines, Iowa. Officer Blad stopped the vehicle at the request of police officers who had reported seeing the vehicle leave an area where gunshots had been fired. Officer Blad, with her gun drawn, ordered Scott and the driver to get out of the car and to place their hands on the car with their legs spread apart. After two additional officers arrived, officer Blad conducted a pat-down search of Scott's outer clothing while another officer conducted a pat-down search of the driver.

While conducting the pat-down search for weapons or bullet casings, officer Blad felt an object in Scott's pants pocket she thought was narcotics. She "heard the sound of a baggy and felt a slender shape like a joint." Simultaneously, she knew the object was not a weapon. She asked Scott what he had in his pocket. He told her "I don't want no trouble, I ain't going to lie, it's marijuana." Blad then removed the baggy from Scott's pocket. After two or three additional questions, officer Blad placed Scott under arrest.

## II. *Scope of Review.*

■ The motion to suppress raises both a Fourth and Fifth Amendment challenge under the federal constitution to the admissibility of evidence seized from Scott's pocket. Our review of constitutional issues is de novo. *State v. Riley,* 501 N.W.2d 487, 488 (Iowa 1993) (*Terry* stop); *State v. Evans,* 495 N.W.2d 760, 762 (Iowa 1993) (*Miranda* issue).

## III. *Terry Stop and Frisk.*

■ In *Terry* the Supreme Court held that, consistent with the Fourth Amendment, police may stop persons to investigate based on a reasonable suspicion that "criminal activity may be afoot...." 392 U.S. at 30, 88 S.Ct. at 1884, 20 L.Ed.2d at 911. The trial court found, and Scott does not dispute, officer Blad had reasonable cause to believe a crime may have occurred and there were articulable objective facts to justify the initial stop of the vehicle in which Scott was a passenger and to briefly detain and conduct a warrantless protective weapons search of the vehicle and its occupants. *Michigan v. Long,* 463 U.S. 1032, 1049–50, 103 S.Ct. 3469, 3480, 77 L.Ed.2d 1201, 1219–20 (1983); *cf. State v. Becker,* 458 N.W.2d 604, 607 (Iowa 1990) (articulable suspicion of criminal activity of speeding driver did not extend to passenger). Under the circumstances, a reasonable person "would be warranted in the belief that his safety or that of others was in danger." *Terry,* 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909.

Relying on *Minnesota v. Dickerson,* 508 U.S. ——, ——, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334, 348 (1993), the district court concluded that seizure of the marijuana from Scott's pocket exceeded the scope of a *Terry* stop. The court reasoned that officer Blad knew when she patted down his clothing that the object in Scott's pocket was not a weapon; nor was it immediately apparent that the object was contraband. The court concluded officer Blad exceeded the scope of a permissible search by asking Scott to identify the object. We disagree and conclude that officer Blad did not overstep the bounds of a protective weapons search under *Terry.*

The State concedes that officer Blad did not immediately recognize the object in Scott's pocket as contraband, she only suspected it was. However, unlike the officer in *Dickerson,* officer Blad did not attempt to further identify the object by "squeezing, sliding, and otherwise manipulating the contents of the defendant's pocket...." *Id.* at ——, 113 S.Ct. at 2138, 124 L.Ed.2d at 347. The scope of a weapons search is exceeded where

> the officer's continued exploration of respondent's pocket after having concluded that it contained no weapon was unrelated to "[t]he sole justification of the search [under *Terry:*] ... the protection of the police officer and others nearby." It therefore amounted to the sort of evidentiary search that *Terry* expressly refused to authorize ... and that we have condemned in subsequent cases.

*Id.* at —— – ——, 113 S.Ct. at 2138–39, 124 L.Ed.2d at 347–48. (Citations omitted). In *Dickerson,* the Court stated:

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context.

*Id.* at ——, 113 S.Ct. at 2137, 124 L.Ed.2d at 346; *see also United States v. Hughes,* 15 F.3d 798, 802 (8th Cir.1994).

■ Here, officer Blad recognized that the object in Scott's pocket was not a weapon;

she suspected it was narcotics but she did not attempt to confirm the suspicion by further manipulation. If the circumstances during an investigatory stop give rise to suspicions unrelated to the reason for the stop, an officer may broaden his or her inquiry and satisfy those suspicions. *United States v. Barahona*, 990 F.2d 412, 416–17 (8th Cir. 1993). Asking Scott the question did not constitute a search. *See United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 155, 44 S.Ct. 54, 56, 68 L.Ed. 221, 224 (1923). We conclude officer Blad did not exceed the scope of an investigatory stop and weapons search by asking Scott about the object.

### IV. *Miranda Protection.*

■ In *Miranda* the Court addressed the question of how the Fifth Amendment guarantee against self-incrimination could provide protection from coercive pressures that may be imposed on a suspect during custodial interrogations. *Miranda*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. The central principle established in *Miranda* is: "if the police take a suspect into custody and then ask him questions without informing him of the rights enumerated [in *Miranda*], his responses cannot be introduced into evidence to establish his guilt." *Berkemer v. McCarty*, 468 U.S. 420, 429, 104 S.Ct. 3138, 3144, 82 L.Ed.2d 317, 328 (1984).

> In determining whether an individual [is] in custody, a court must examine all of the circumstances surrounding the interrogation, ·but "the ultimate inquiry is simply whether there was a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest."

*Stansbury v. California*, 511 U.S. ——, ——, 114 S.Ct. 1526, 1528–29, 128 L.Ed.2d 293, 298 (1994) (citation omitted). We apply an objective standard when making this determination. *Id.* at ——, 114 S.Ct. at 1529, 128 L.Ed.2d at 299–30.

The district court found Scott was in custody at the time of the pat-down search because guns were drawn and his freedom of movement was restrained. Because no *Miranda* warnings were given prior to officer Blad's question about the item in Scott's pocket, the court concluded the question violated his *Miranda* rights. We disagree.

■ The temporary detention of a motorist in an ordinary traffic stop is not considered "in custody" for purposes of *Miranda*. *Berkemer*, 468 U.S. at 437–39, 104 S.Ct. at 3148–50, 82 L.Ed.2d at 333–34. Similarly, the use of a weapon by a peace officer as a protective measure during an investigatory stop does not convert the stop into an arrest if the officer's action is ·reasonable under the circumstances. *In re S.A.W.*, 499 N.W.2d 739, 742 (Iowa App.1993); *United States v. Raino*, 980 F.2d 1148, 1149–50 (8th Cir.1992). Officers are entitled to protect themselves. To allow such a protective measure to transform a *Terry* stop into an arrest would create a dangerous dilemma for law enforcement officers. *United States v. Jackson*, 652 F.2d 244, 249 (2d Cir.1981).

> If the officer approaches a [suspect] with his gun still in his holster, he increases the risk that he will be shot. If, on the other hand, he protects himself by drawing his gun, he increases the risk that a court will set the criminal free by construing his action as an illegal arrest. We decline to impose such a Hobson's Choice on our law enforcement personnel.

*Id.* at 249–50. Likewise, we believe that when an officer detects an object that may be contraband during a pat-down search, the officer may ask what it is because "the right to interrogate during a 'stop' is the essence of *Terry* and its progeny." *United States v. Oates*, 560 F.2d 45, 63 (2d Cir.1977).

■ We conclude Scott was not in custody for *Miranda* purposes when he was asked about the object in his pocket. The investigatory stop was temporary and brief. The stop and search was conducted in public. The officers followed routine procedures during the pat-down search. The marijuana was removed from Scott's pocket only after he told the officer that he had marijuana in his pocket. At that time the officer had probable cause to seize the baggy and to arrest Scott for illegal possession. The investigatory stop ripened into a probable cause arrest. We therefore reverse the district court ruling

on the motion to suppress and remand the case for trial.

**REVERSED AND REMANDED.**