**STATE of Iowa, Plaintiff–Appellee,**

**v.**

**Seth LEATON, Defendant–Appellant.**

**No. 12–1691.**

Court of Appeals of Iowa.

July 10, 2013.

Nathan W. Tucker, Davenport, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney General, Janet M. Lyness, County Attorney, and Elizabeth Beglin, Assistant County Attorney, for appellee.

Heard by POTTERFIELD, P.J., and DANILSON and MULLINS, JJ.

POTTERFIELD, P.J.

Seth Leaton challenges the district court's denial of his motion to suppress. Because the pat-down search was not supported by reasonable suspicion the defendant was armed and because the State

failed to prove the defendant consented to the search of his person, the district court erred in failing to grant the defendant's motion to suppress. We reverse and remand.

## I. Background Facts and Proceedings.

On August 13, 2011, at about 11:00 p.m., Officer Chris Shine observed a vehicle with the red covering of the taillight broken. He stopped the vehicle. The driver, Leaton, provided to the officer the written warning for the broken taillight Leaton had been issued just days before. While Officer Shine was examining Leaton's paperwork, he asked Leaton if he was "on probation or parole or anything like that, if [he had] ever been in trouble." Leaton replied that he had previously been arrested for possession of marijuana. He was not on probation.

After preparing a written warning in his patrol car, Officer Shine returned to Leaton's vehicle and asked him to get out of the car. Leaton asked the officer why, and the officer told him he wanted to show Leaton the taillight. As Leaton got out of the car, Officer Shine asked if he could pat him down. According to the officer, Leaton did not give a verbal response. The officer stated, "I believe he shrugged his shoulders. He never—He never told me no, that I couldn't."

Upon conducting the pat-down search, Officer Shine found a marijuana pipe and a baggy of marijuana in a cargo pocket of Leaton's pants.

Leaton was arrested and charged with possession of a controlled substance, marijuana. He filed a motion to suppress, alleging that the pat-down search was in violation of both the Iowa and United States Constitutions. He argued there was no reasonable suspicion that he was armed to support a protective frisk under

*Terry,* and "to the extent the State may try to justify the frisking based on some consent theory, the consent would not have been voluntary." Leaton also asserted "even a request for consent to search incident to traffic offense would need to be supported by at least reasonable suspicion," citing *State v. Pals,* 805 N.W.2d 767, 776 (Iowa 2011).

A hearing was held on the motion on March 26, 2012. Officer Shine testified he asked to search Leaton because "[t]he time of the night, umm, and also the—we never know what we're going to find on people when we ask them out of a vehicle." On cross-examination, Officer Shine was asked "just to clarify, there was absolutely no suspicion on your part in this particular case that he had any kind of weapon?" Officer Shine responded, "At that point, I have no idea." The officer stated that if Leaton had declined to consent to the pat-down search, he would have told Leaton to sit back down in his car.

Leaton testified at the hearing and described being stopped three days before August 13 for the broken taillight. On that first occasion, the officer asked for consent to search his vehicle. Leaton declined and was given a written warning for the taillight. On August 13, when he was again stopped, Leaton testified the officer asked him to step out of the vehicle to "show me where my taillight was broken and give me a written warning and nothing else." Leaton continued,

> I hadn't even fully stepped up or shut my door before he asked if he could pat me down for weapons, at which point I raised my arms slightly so that he could see my belt line, because it was—I was wearing cargo pants with an "A" type undershirt that was tucked into my pants because I was still sweating from work. And he could clearly see my belt

line, and I didn't feel that I posed a threat.

Q. That—That did you say anything, one way or the other, other than raising your arms? A. Absolutely not.

Q. That if he had said to you, Can I pat you down, and given you a chance to respond, what would you have said? A. I would have asked him why and probably responded, No, not without a warrant.

Q. And did you, in fact, over the course of the next few minutes tell them that you didn't think that they could be stopping and search you because you didn't—they didn't have a warrant? A. Repeatedly.

The patrol car video recording of the stop shows Leaton did not verbally consent to the request for a pat-down search. In a rapid sequence of events, Leaton raises his arms away from his body as he is getting out of the car, and the officer immediately pats him down.

The district court denied the motion to suppress, finding the search was appropriate for officer safety purposes.

The case then proceeded to a stipulated bench trial, and Leaton was convicted as charged.

On appeal, Leaton contends the officer had no reasonable basis to conduct the pat-down search and he did not consent to a search of his person.

## II. Scope and Standards of Review.

■■■ We review an appeal from a motion to suppress on constitutional grounds de novo. *Pals*, 805 N.W.2d at 771. We look to the entire record and conduct an independent evaluation of the totality of the circumstances. *Id.* We give deference to the findings of the district court, as it had the opportunity to observe witnesses and evaluate their credibility; however, we are not bound by those findings. *Id.*

## III. Discussion.

■■■ Under *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), an officer has authority to conduct a reasonable search for weapons for the officer's own protection, where the officer has reason to believe that the officer is dealing with an armed and dangerous individual, regardless of whether there is probable cause to arrest the individual. *See also Michigan v. Long*, 463 U.S. 1032, 1047–48, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

> The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

*Terry*, 392 U.S. at 27, 88 S.Ct. 1868 (citations omitted). In justifying this particular intrusion upon individuals' constitutionally protected interests, the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. *Id.* at 21, 88 S.Ct. 1868.

■■■ Under our de novo review of the totality of the circumstances presented here, we conclude there is no basis to support a reasonable suspicion that the defendant was armed and dangerous. The State concedes the district court erred in upholding the search on grounds of reasonable suspicion.

However, the State urges us to affirm on grounds Leaton consented to the search. In the district court, Leaton argued (1) an officer must have justification to seek consent and (2) the defendant did not voluntarily consent. The district court made no findings as to consent since it upheld the search on grounds of reasonable suspicion.

On appeal, Leaton contends we should answer the question left open in *Pals,* "whether a knowing or intelligent waiver of search and seizure rights, such as that adopted in New Jersey, Washington, Mississippi, or Arkansas [which may include requiring police to advise a motorist that the motorist is free to leave or free to refuse to allow the search], is required to establish consent under article I, section 8 of the Iowa Constitution." We decline the invitation as it is not necessary to deciding this case.

In *State v. Lowe,* 812 N.W.2d 554, 572 (Iowa 2012), our supreme court stated:

A warrantless search conducted by free and voluntary consent does not violate the Fourth Amendment. [*State v.*] *Reinier,* 628 N.W.2d [460,] 465 [ (Iowa 2001) ] (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). Consent is considered to be voluntary when it is given without duress or coercion, either express or implied. *See Schneckloth,* 412 U.S. at 227, 93 S.Ct. [2041]. This test balances the competing interests of legitimate and effective police practices against our society's deep fundamental belief that the criminal law cannot be used unfairly. *See id.* at 224–25, 93

S.Ct. [2041]. Thus, the concept of voluntariness which emerges as the test for consent represents a fair accommodation of these interests and values. *See id.* at 229, 93 S.Ct. [2041].

"Consent given to a search must be unequivocal, specific, and freely and intelligently given." *State v. Howard,* 509 N.W.2d 764, 767 (Iowa 1993). It is the State's burden to prove the consent was voluntary, and voluntariness is a "question of fact to be determined from the totality of all the circumstances."[1] *State v. Lane,* 726 N.W.2d 371, 378 (Iowa 2007) (quoting *Schneckloth,* 412 U.S. at 227, 93 S.Ct. 2041). "The State is required to establish the consent was voluntary by a preponderance of the evidence." *Reinier,* 628 N.W.2d at 465; *see also Ochoa,* 792 N.W.2d at 266 (noting that a prior opinion holding the State must show consent by clear and convincing evidence was reversed sub silentio in *Bettuo v. Pelton,* 260 N.W.2d 423, 425 (Iowa 1977), in light of United States Supreme Court's intervening footnote in *United States v. Matlock,* 415 U.S. 164, 177 n. 14, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974)).

The State argues that Leaton's consent was implied: "if one is asked for consent to search and that person's response is to raise his or her arms, it is a clear indication of a 'yes' answer." It is true that "[c]onsent does not necessarily need to be given verbally." *Reinier,* 628 N.W.2d at 467. But we look to the surrounding circumstances to determine whether the State carried its burden to prove Leaton's gesture constituted consent. *See id.* (finding act of opening door under circum-

---

1. "There is of course little doubt that, in light of the nearly identical language in article I, section 8 and the Fourth Amendment, they were generally designed with the same scope, import, and purpose." *State v. Ochoa,* 792 N.W.2d 260, 267 (Iowa 2010). In *Pals,* the court determined consent was not voluntary applying "an Iowa version of the *Schneckloth*-type 'totality of the circumstances' test." 805 N.W.2d at 782. We apply a totality of circumstances test here.

stances was not consent for police to enter).

A number of factors have been developed to help determine the validity of the consent given. These factors consider both the circumstances surrounding the consent given and the characteristics of the defendant. None of the factors, however, are individually controlling in most instances, but must be considered in combination with all of the circumstances. These factors include knowledge by the defendant of the right to refuse to consent. Another factor is whether police asserted any claim of authority to search prior to obtaining consent. The show of force or other types of coercive action by police are additional factors to consider.

*Id.* at 465–66 (citations omitted).[2]

We disagree with the State that Leaton's lifting of his arms to belt level was a "clear indication" of consent to a search. We stand with other courts that have considered the question and concluded that a shrug is not a sufficient gesture to consent to a search. *See, e.g., State v. Harris,* 642 A.2d 1242, 1246–47 (Del.Super.Ct.1993) (concluding "[a] shrug of the shoulders, palms extended upward" was not a sufficient gesture of consent to search a toolbox); *State v. Zapp,* 108 Idaho 723, 701 P.2d 671, 674 (App.1985) (finding shrugging shoulders and holding up a bag were not sufficient gestures of consent to search the bag); *People v. Raibley,* 338 Ill.App.3d 692, 273 Ill.Dec. 345, 788 N.E.2d 1221, 1230 (2003) (concluding defendant's shrug

"was not an unambiguous expression of consent"); *State v. Mitzel,* 685 N.W.2d 120, 125 (N.D.2004) (finding "[m]ere acquiescence to police authority is insufficient to show consent" where defendant "kind of shrugged and started walking back to the bedroom"). As one court has stated, "In the case of nonverbal conduct, where dueling inferences so easily arise from a single ambiguous gesture, the defendant's intention to surrender this valuable constitutional right should be unmistakably clear." *People v. Anthony,* 198 Ill.2d 194, 260 Ill. Dec. 632, 761 N.E.2d 1188, 1193 (2001).

A shrug can express "aloofness, indifference, or uncertainty." Merriam Webster's Collegiate Dictionary 1084 (10th ed. 2000).... The State has the burden of proving the consent was voluntary. [*Anthony,* 260 Ill.Dec. 632, 761 N.E.2d] at 1192. The State cannot carry that burden by proving that defendant shrugged. The shrug could have meant "I don't know." It could have expressed aloofness—or contempt. It could have expressed defendant's acquiescence to authority....

*Raibley,* 273 Ill.Dec. 345, 788 N.E.2d at 1230.

We conclude that the district court erred by refusing to grant Leaton's suppression motion. As a result, the judgment of the district court is reversed and the case remanded for further proceedings.

**REVERSED AND REMANDED.**

---

**2.** In *Pals,* 805 N.W.2d at 782–83, the court looked to four specific factors in determining the motorist's consent to search his vehicle was not voluntary under the Iowa Constitution. It first noted the motorist had already been subject to a pat-down search, that the motorist was detained in a police vehicle during the subsequent consent to search—not "an encounter on the familiar surroundings

of the threshold of one's home," that the motorist was not advised he was free to leave "or that he could voluntarily refuse consent without any retaliation by police," and the motorist was not advised that the officer had concluded the stop-related business prior to requesting further consent to search. *See Pals,* 805 N.W.2d at 782–83.