# IN THE SUPREME COURT OF IOWA

No. 14–0656

Filed February 12, 2016

**STATE OF IOWA,**

Appellee,

vs.

**STEPHEN SCOTT PRUSHA,**

Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Marshall County, Kim M. Riley, District Associate Judge.

A criminal defendant seeks further review of a court of appeals decision affirming his conviction for methamphetamine possession, contending police obtained evidence through a warrantless search that violated his constitutional right to be free from unreasonable searches. **COURT OF APPEALS DECISION AND DISTRICT COURT JUDGMENT AFFIRMED.**

Darrell G. Meyer, Marshalltown, for appellant.

Thomas J. Miller, Attorney General, Kelli Huser, Assistant Attorney General, Jennifer Miller, County Attorney, and Ben Stansberry, Assistant County Attorney, for appellee.

Alan R. Ostergren, Muscatine, for amicus curiae Iowa County Attorneys Association.

**HECHT, Justice.**

Stephen Prusha contends we should now decide the question we "reserved for another day" in *State v. Pals*, 805 N.W.2d 767, 782 (Iowa 2011): whether article I, section 8 of the Iowa Constitution requires police to "advise an individual of his or her right to decline to consent to a search." However, we decline Prusha's invitation and continue to leave the consent advisory question open because we conclude Prusha did not raise the Iowa Constitution when he challenged the search before the district court. We therefore evaluate the search in this case solely under the Fourth Amendment, and we conclude Prusha voluntarily consented to the search under the totality of the circumstances presented here.

## I. Background Facts & Proceedings.

Just after 1:10 a.m. on April 5, 2013, while on patrol in a rural area about four miles east of Marshalltown, Marshall County Deputy Sheriff John Shaver observed a pedestrian walking on the side of the road. Deputy Shaver found it unusual to see a pedestrian at that time of night in that area, so he pulled his police cruiser to the side of the road in front of the pedestrian. He activated the vehicle's rear amber directional lights but not its red and blue emergency lights. Deputy Shaver later testified he pulled over because he "wanted to make sure [the pedestrian] was okay, make sure he hadn't been in an automobile accident, . . . [gone] in the ditch, anything like that."

The pedestrian removed his billfold from his pocket to retrieve his identification. As Deputy Shaver exited the car and approached him, the pedestrian kept walking toward the cruiser and proactively handed Deputy Shaver his identification. The identification revealed Prusha was the pedestrian, and Deputy Shaver asked Prusha why he was walking along the road at such a late hour. Prusha responded that he was

walking to his home in Marshalltown after having an argument with his girlfriend. Deputy Shaver later testified Prusha appeared calm and responsive during their interaction and did not appear to be intoxicated or otherwise impaired.

Deputy Shaver relayed Prusha's license information to a dispatcher to check for outstanding warrants. There were no outstanding warrants, but the dispatcher advised Deputy Shaver that Prusha was "flagged" because he "was known to interfere and had a history of illegal drug use"—although he had no drug arrests or other criminal history involving drugs. The dispatcher provided no additional information about why Prusha was flagged.

Although he had confirmed that Prusha did not need assistance or emergency aid, Deputy Shaver acted on the information his dispatcher provided. Deputy Shaver asked Prusha if he possessed any weapons or drugs. Although Prusha denied possession of such items, Deputy Shaver asked Prusha if he would consent to a search of his person. Deputy Shaver did not tell Prusha that he could refuse consent and was free to go, but Deputy Shaver testified, and his report states, that Prusha consented to a search.[1]

Deputy Shaver asked Prusha to walk toward the patrol car and Prusha agreed to do so. However, Prusha then reached his hand into his pocket. Deputy Shaver quickly grabbed Prusha's wrist to keep his hand inside the pocket because he thought Prusha might be retrieving a weapon. Prusha said he would show Deputy Shaver what was in his pocket and pulled his hand out slowly to reveal a glass pipe containing a

---

[1]Neither Deputy Shaver's report nor his testimony details Prusha's exact words or gestures responsive to the request for consent to search. Prusha did not testify at the suppression hearing.

powdery residue. Deputy Shaver confiscated the pipe, arrested Prusha, and handcuffed him. Deputy Shaver then searched Prusha's pockets and discovered a plastic bag containing about a half gram of methamphetamine.

The State charged Prusha with possessing methamphetamine. *See* Iowa Code § 124.401(5) (2013). Prusha moved to suppress any statements or confessions he gave and any evidence obtained through a warrantless search. The district court denied the motion. It concluded that under the "totality of the circumstances" approach established in *Schneckloth v. Bustamonte*, 412 U.S. 218, 248–49, 93 S. Ct. 2041, 2059, 36 L. Ed. 2d 854, 875 (1973), Prusha voluntarily consented to the search.

After the district court denied his motion to suppress, Prusha pled guilty to the methamphetamine possession charge. The court accepted the plea. Prusha appealed his conviction, contending the warrantless search violated both the Federal and Iowa Constitutions. We transferred the case to the court of appeals. The court of appeals upheld the warrantless search and affirmed Prusha's conviction. Prusha sought, and we granted, further review. As in all cases implicating constitutional protections, our review is de novo.

**II. Analysis.**

**A. Error Preservation.** In his motion to suppress, Prusha asserted the State illegally obtained both statements and evidence from him. He contended in one paragraph that the statements were "improperly obtained in violation of the 4th, 5th, and 6th Amendments to the United States Constitution . . . and in violation of the Constitution of the State of Iowa." He contended in a separate paragraph that any search violated "the statutes of the State of Iowa and . . . the

Constitution of the United States." We find no evidence in the record that counsel filed a written brief detailing authority supporting the suppression motion.

At the suppression hearing, the attorneys spoke generally about the consent exception to the warrant requirement, without specifying whether they relied upon the warrant requirement under the Fourth Amendment, the Iowa Constitution, or both. The district court cited and discussed *Pals*, a case decided under article I, section 8, but applied a multifactor voluntariness test from a federal (Eighth Circuit) case and ultimately ruled only that the warrantless search "did not violate the Fourth Amendment."

Prusha forcefully argues in his appellate brief for a different standard under the Iowa Constitution, but we conclude this argument comes too late.[2] He recognized the Iowa Constitution as a possible independent basis for suppression, because he made that assertion with respect to *statements*, a separate issue—yet he did not assert it as a ground for suppressing the evidence obtained through the warrantless search. Thus, we conclude Prusha never apprised the district court that he believed the search violated article I, section 8. *Cf. State v. Vance*, 790 N.W.2d 775, 780 (Iowa 2010) ("In the district court . . . , Vance's counsel failed to raise the legality of the stop under the Iowa Constitution. For this reason, we will limit our discussion regarding the legality of the stop to the Fourth Amendment." (Citation omitted.)). Although the district court discussed *Pals* in ruling on the motion to suppress, we cannot conclude confidently that by doing so, the district court adjudicated an

---

[2]Prusha's appellate counsel did not represent him before the district court. We emphasize that Prusha's failure to preserve error under article I, section 8 is not attributable to his appellate counsel.

issue Prusha never asked it to decide under article I, section 8. Accordingly, we only address Prusha's Fourth Amendment claims. *See id.*

**B. Whether Deputy Shaver Seized Prusha.** "Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen." *United States v. Drayton*, 536 U.S. 194, 200, 122 S. Ct. 2105, 2110, 153 L. Ed. 2d 242, 251 (2002). That is what happened here. Prusha only encountered Deputy Shaver, not a cadre of officers. Deputy Shaver did not activate his vehicle's emergency lights and there is no indication in the record that he spoke to Prusha in an intimidating or commanding tone. We conclude Deputy Shaver did not seize Prusha within the meaning of the Fourth Amendment by approaching him and asking a few questions. *See id.*

**C. Consent Principles.** In *Schneckloth*, the Supreme Court noted voluntariness "cannot be taken literally to mean a 'knowing' choice" under the Fourth Amendment. *Schneckloth*, 412 U.S. at 224, 93 S. Ct. at 2046, 36 L. Ed. 2d at 861. Instead, the Court concluded voluntary consent "is a question of fact to be determined from the totality of all the circumstances," and "knowledge of the right to refuse consent is one factor to be taken into account." *Id.* at 227, 93 S. Ct. at 2048, 36 L. Ed. 2d at 863. Other factors include "subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents." *Id.* at 229, 93 S. Ct. at 2049, 36 L. Ed. 2d at 864.

**D. Application of *Schneckloth*.** Under *Schneckloth*, knowledge of the right to refuse "is not a prerequisite to establishing . . . voluntary consent; it is merely a factor in determining its voluntariness." *State v.*

*Folkens*, 281 N.W.2d 1, 4 (Iowa 1979). Although it is not a per se ground for concluding consent was involuntary, the fact Deputy Shaver did not provide a consent advisory weighs against voluntariness here.

The other factors commonly considered in a *Schneckloth* totality analysis, however, lead us to conclude Prusha's consent was voluntary. Deputy Shaver did not seize Prusha under prevailing Fourth Amendment principles. Similarly, Deputy Shaver did not assert any claim of authority to search or deceptively imply he was only after major drug users. Only he and Prusha were present. *See State v. Lane*, 726 N.W.2d 371, 380 (Iowa 2007) (noting, as one factor weighing in favor of voluntariness, that a single officer requested consent to search and explained a consent form while other officers waited outside the room ).

Prusha's personal characteristics also indicate his consent was voluntary. He was in his forties and there is no indication in the record that Prusha was impaired, either from a disability or from any substance, to such an extent as to be unable to understand Deputy Shaver's questions.

Finally, because the record does not establish how long the encounter lasted, we are unable to determine whether Deputy Shaver's communication with the dispatcher and questions posed to Prusha unreasonably lengthened it. Additionally, Prusha's interaction with Deputy Shaver occurred in a public place, and his contemporaneous reaction was to facilitate the search. On balance, we conclude Prusha voluntarily consented to the search in this case.

### III. Conclusion.

Prusha did not raise the Iowa Constitution as a basis for suppression until his appeal. Therefore, he did not preserve error on article I, section 8, and we consider his suppression claims solely under

the Fourth Amendment. Deputy Shaver did not provide a consent advisory, but the Fourth Amendment *Schneckloth* standard does not require one; instead, it is one factor in a totality analysis. While that factor weighs against voluntariness here, the other circumstances indicate Prusha voluntarily consented to the search, and the search was therefore valid under the Fourth Amendment. Because the search was valid, the district court correctly denied Prusha's motion to suppress. We affirm Prusha's conviction.

**COURT OF APPEALS DECISION AND DISTRICT COURT JUDGMENT AFFIRMED.**