# IN THE COURT OF APPEALS OF IOWA

No. 17-1794
Filed August 15, 2018

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**JERALD DAVID FROST,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Linn County, Russell G. Keast (motion to suppress), Nicholas L. Scott (stipulated trial), and Casey D. Jones (sentencing), District Associate Judges.

A defendant appeals his conviction for possession of methamphetamine. **REVERSED AND REMANDED.**

Mark C. Smith, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Zachary C. Miller, Assistant Attorney General, for appellee.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**TABOR, Judge.**

Jerald Frost appeals his conviction for possession of methamphetamine, claiming police violated his constitutional protection against unreasonable search and seizure by finding contraband inside a closed container taken from Frost's pocket during a warrantless search. Because police exceeded the scope of Frost's consent, we reverse the suppression ruling and remand for further proceedings.

## I. Facts and Prior Proceedings

Around 2 a.m., Jennifer Roberts, a sergeant with the Cedar Rapids Police Department, overheard dispatch refer to a "suspicious vehicle"—the occupants of a white van entered a residence where police had been frequently called to deal with "stolen vehicles, narcotics and wanted persons." According to dispatch, the suspects "carried a bunch of stuff out, apparently getting back into the van." A patrol unit tracked the van for several blocks, trying to establish probable cause to investigate, but found no valid reason for a traffic stop.

Sergeant Roberts saw the van turn into a Walgreens parking lot and decided to follow. The van parked in a designated space. Roberts, who was in uniform and driving a marked squad car, pulled in behind and slightly to the side of the van so as to not block it in. As Roberts left her vehicle, two other police cars, including an unmarked sedan driven by Officer Christopher Brand, converged on the Walgreens lot. A total of three police vehicles and five police officers joined the investigation. None of the police vehicles activated emergency lights or sirens.

Roberts approached the driver, who had stepped out of the van, and asked if she could speak with him. Roberts did not direct any questions to the van's two passengers. The driver agreed to speak to the officer and identified himself as

Jerald Frost. Roberts asked to see his driver's license to verify his identity. As Roberts returned Frost's license, Officer Brand walked up. Both Roberts and Brand carried firearms and tasers but did not draw them. Roberts told Frost she had received a report of the van's occupants removing items from a residence associated with methamphetamine use and one of the van's passengers was a known methamphetamine user. Roberts then asked Frost "if he had anything illegal on him." Frost denied possessing anything illegal.

Roberts thanked Frost for speaking with the officers, told him he was free to go, but then asked if Officer Brand could "pat him down". Frost raised his arms in response. Brand also asked permission before beginning the patdown. Frost verbally consented to Brand's request. During the patdown, Brand felt and removed two aluminum cylinders with screw lids from Frost's front pants pocket. Brand opened both cylinders without seeking Frost's permission. One cylinder contained methamphetamine.

The State charged Frost with possession of methamphetamine, in violation of Iowa Code section 124.401(5) (2017). Frost filed a motion to suppress evidence seized during the warrantless search. The motion cited both the Fourth Amendment of the United States Constitution and article I, section 8 of the Iowa Constitution. The district court held a suppression hearing where the State called Roberts and Brand as the only witnesses. The court denied the motion to suppress, concluding Frost was not seized, consented to the search, and by raising his hands, indicated he knew the extent of the search request. Frost waived his right to a jury trial and proceeded to a trial on the minutes of evidence. The district court found Frost guilty beyond a reasonable doubt. Frost now appeals.

## II. Standard of Review

We review issues involving constitutional claims de novo. *State v. Pals*, 805 N.W.2d 767, 771 (Iowa 2011). When reviewing the reasonableness of a search, we look to the entire record in light of the unique circumstances of each case. *Id*. We defer to the district court's fact findings but we are not bound by those findings. *State v. Turner*, 630 N.W.2d 601, 606 (Iowa 2001).

Both the Fourth Amendment and article I, section 8 of the Iowa constitution protect citizens from unreasonable search and seizure. *State v. Ingram*, 914 N.W.2d 794, 799 (Iowa 2018) (highlighting "the potential for an independent state court interpretation under the state constitution that is more protective of individual rights"). When a defendant raises both federal and state constitutional claims, we may choose to consider either claim first, or both claims simultaneously. *State v. Ochoa*, 792 N.W.2d 260, 267 (Iowa 2010).

## III. Discussion

On appeal, Frost presents two separate suppression claims based on state and federal constitutional provisions. First, Frost contends he was impermissibly seized by officers in the Walgreens parking lot. Second, Frost challenges the proof of his voluntary consent to the patdown and the scope of the search.[1]

---

[1] In challenging his consent to the patdown, Frost asserts article I section 8 of the Iowa Constitution should be interpreted to require law enforcement to inform citizens of the right to refuse to consent to a warrantless search wherein no exigencies are present. *See Pals*, 805 N.W.2d at 779–80. Because we reverse the district court's suppression ruling on other grounds, we need not address this issue. *See State v. Leaton*, 836 N.W.2d 673, 677 (Iowa Ct. App. 2013).

## A. Seizure

"Whether a 'seizure' occurred is determined by the totality of the circumstances." *State v. Wilkes*, 756 N.W.2d 838, 842 (Iowa 2008) (citation omitted). "Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen." *State v. Prusha*, 874 N.W.2d 627, 630 (Iowa 2016) (citation omitted). An individual's conversation with police officers remains consensual absent law enforcement's use of physical force or other show of authority. *State v. Smith*, 683 N.W.2d 542, 547 (Iowa 2004). When deciding if a voluntary encounter has transformed into a seizure, we look for objective indications of an officer's coercion or dominion over a person. *Id.*; *see State v. White*, 887 N.W.2d 172, 176–77 (Iowa 2016) (suggesting objective indicators of a seizure may include use of flashing emergency lights, an officer's restriction of an individual's ability to leave an encounter, and an officer's volume and tone of speech when addressing an individual).

An encounter with police turns into a seizure when circumstances are sufficiently intimidating such that a reasonable person would believe they are not free to leave without responding. *State v. Reinders*, 690 N.W.2d 78, 82 (Iowa 2004) (citation omitted). Although three police vehicles and five officers entered the Walgreens lot, none of the vehicles used emergency lights. *See White*, 887 N.W.2d at 176. The police vehicles were scattered around the lot, not surrounding Frost's van. *See id.* at 176–77. Neither the officers nor their vehicles physically blocked Frost from entering the Walgreens store or driving out of the parking lot if

he wished to leave. *Id.* at 177. A passenger in the van also exited the vehicle and entered Walgreens during Frost's conversation with Roberts without stopping for police or answering questions.

Only two police officers approached Frost. Sergeant Roberts asked Frost if she could talk with him. Throughout the conversation, Roberts never raised her voice, drew a weapon, or exhibited behavior objectively indicating an attempt to gain dominion over Frost. *See Smith*, 683 N.W.2d at 547. Because a reasonable person would have felt free to leave Frost's encounter with police, his choice to participate in the questioning was voluntary and he was not seized for the purposes of either federal or state constitutional provisions.

## B. Consent Search

### 1. Permission for Patdown

A warrantless search is unconstitutional unless a recognized exception applies. *Reinders*, 690 N.W.2d at 83. Free and voluntary consent is one exception to the warrant requirement. *State v. Reinier*, 628 N.W.2d 460, 464–65 (Iowa 2001). "Consent given to a search must be unequivocal, specific, and freely and intelligently given." *State v. Howard*, 509 N.W.2d 764, 767 (Iowa 1993) (citations omitted). Consent is voluntary when provided free of duress and express or implied coercion. *Reinier*, 628 N.W.2d at 465. The State has the burden of establishing consent was voluntary by a preponderance of the evidence. *Id.* Voluntary consent is a question of fact determined by an examination of all the relevant surrounding circumstances. *Prusha*, 874 N.W.2d at 630. An individual's knowledge of the right to refuse consent to a warrantless search is one factor in determining voluntariness. *Id.* Other potential factors include the nature of police

questions, the vulnerability of the individual giving consent, and the number of officers seeking consent. *State v. Pettijohn*, 899 N.W.2d 1, 32 (Iowa 2017).

"Consent may be express or implied." *State v. McConnelee*, 690 N.W.2d 27, 30 (Iowa 2004). Consent may be granted through words, gestures, or non-verbal conduct. *Reinier*, 628 N.W.2d at 467. The State must show an individual's consent to a search beyond general cooperation with law enforcement. *State v. Lathum*, 380 N.W.2d 743, 745 (Iowa Ct. App. 1985).

Frost first disputes the State's proof of his voluntary consent to the patdown performed by Officer Brand. Frost argues the raising of his arms was mere acquiescence to the officer's demand and an insufficient showing of voluntary consent. *See State v. Leaton*, 836 N.W.2d 673, 678 (Iowa Ct. App. 2013).

Roberts testified she initially asked Frost if Officer Brand could pat him down and Frost raised his arms. Roberts further testified Brand also asked Frost for permission to pat him down and Frost replied, "Yes, that would be fine." Brand opined during the suppression hearing that an individual who puts his hands in the air "usually signifies consent." Brand testified he asked Frost if he "could check his body for anything illegal" before beginning the pat-down and Frost "consented." In overruling the suppression motion, the district court stated, "[Frost], by his actions of raising his arms, indicated a knowledge of the request and the extent of the request."

Frost's raising of his arms, without more, is insufficient to show an "unequivocal, specific" consent to the patdown. *See id.* But, Frost's raising of his arms while also verbally agreeing to Brand's request to perform a patdown

qualified as consent to the limited search.  *Howard*, 509 N.W.2d at 767; *accord Leaton*, 836 N.W.2d at 677.

### 2.  Scope of the Search

Alternatively, Frost argues if he voluntarily consented to a patdown, the scope of his consent did not extend to a search of the inside of his pants pocket or the opening of the containers.

"In conducting any consent search, [law enforcement] are limited by the terms of the consent."  *State v. Myer*, 441 N.W.2d 762, 765 (Iowa 1989).  "The scope of the search must be 'strictly tied to and justified by' the circumstances which rendered its initiation possible."  *Pals*, 805 N.W.2d at 775 (quoting *Terry v. Ohio*, 392 U.S. 1, 19 (1968)).  The scope of consent is limited "by what a typical reasonable person [would] have understood by the exchange between the officer and the suspect."  *McConnelee*, 690 N.W.2d at 30 (alteration in original) (citations omitted).  Once the suspect gives specific consent, the officer cannot expand a search into other areas unless another exception to the warrant requirement applies.  *Id.* at 32.

Brand and Roberts both testified to requesting permission to perform a "patdown" of Frost.[2]  A patdown or frisk is "a careful exploration of the outer surfaces of a person's clothing all over his or her body . . . ."  *Terry*, 392 U.S. at 16.

---

[2] The dissent contends Officer Brand asked Frost for consent to perform an expanded search for "anything illegal" on "his person."  The suppression record does not support that interpretation.  On cross examination, defense counsel engaged in the following exchange with Officer Brand.

Q.     You didn't explain to Mr. Frost that difference between a pat-down and a full search? A No, I did not.

Q. You didn't tell him that what you were asking was more than just a simple pat-down? A. No, I did not.

A patdown is "characterized as something less than a 'full' search" despite being constitutionally intrusive. *Id.* at 26. A reasonable person would have understood the request from Brand and Roberts as being limited to patting the outer surface of Frost's clothes. Any continued exploration, for example reaching into Frost's pants pocket, without triggering an additional exception to the warrant requirement, exceeded the scope of his consent and was per se unreasonable. *See State v. Scott*, 518 N.W.2d 347, 349–50 (Iowa 1994). As the label suggests, a patdown is not a "reach-in search." *See Wright v. City of Milwaukee*, No. 13-C-1028, 2015 WL 1728072, at *3 (E.D. Wis. April 15, 2015) (citing *Sibron v. New York*, 392 U.S. 40, 65 (1968) (officer may not reach into suspect's pocket in search of narcotics without first conducting patdown of outer clothing to locate weapons)).

Officer Brand testified he felt two aluminum cylindrical containers in Frost's pants pocket during the patdown. Brand acknowledged he had to remove the containers and their lids to locate the drugs. The State argues when Officer Brand found the aluminum containers, he was permitted to remove them from Frost's pocket and open the lids to complete his search for "anything illegal." Because Frost gave permission only to be "patted down" and not fully searched, Officer Brand's act of reaching into Frost's pocket ventured beyond the scope of consent.

Neither was the search of Frost's pocket justified by another exception to the warrant requirement, such as the plain-feel doctrine. "If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent . . . its warrantless seizure would be justified." *Minnesota v. Dickerson*, 508 U.S. 366, 375–76 (1993); *accord Scott*, 518 N.W.2d at 349–50; *State v. Harriman*, 737 N.W.2d 318, 319–20 (Iowa Ct. App.

2007). But when the incriminating character of an object is not immediately apparent to an officer, any further manipulation of the object is not authorized under the plain feel exception. *Dickerson*, 508 U.S. at 379. Without evidence of immediate recognition by Officer Brand that the items held contraband, taking the containers from Frost's pocket and opening them was an unreasonable intrusion.

The State has the burden of showing by a preponderance of the evidence that Frost consented to the expanded search. *See Pettijohn*, 899 N.W.2d at 14. Frost consented only to a patdown. Officer Brand testified he did not ask Frost about the cylinders before removing them from his pocket nor did he ask permission to open them before unscrewing the lids. *See Scott*, 518 N.W.2d at 350. Absent knowing and voluntary consent from Frost or any other recognized exception to the warrant requirement, Officer Brand's seizure and search of the closed containers was impermissible under state and federal constitutional provisions. *See Ingram*, 914 N.W.2d at 820.

## IV. Conclusion and Disposition

The officers did not seize Frost and did obtain his voluntary consent to a patdown. But the subsequent search of Frost's pocket and the opening of the containers inside exceeded the scope of his consent. Consequently, the district court should have suppressed the evidence obtained in the officer's search of the pocket. We reverse the judgment of conviction and remand for a new trial in which the evidence obtained from the pocket is excluded.

**REVERSED AND REMANDED.**

Danilson, C.J., concurs; Vogel, J., partially dissents.

**VOGEL, Judge** (concurring in part and dissenting in part)**.**

I concur with the majority that no seizure occurred but I dissent in part because I believe the record reveals that Frost consented to the search of his person. Officer Brand testified about the events leading up to the search:

> Q. [A]t a certain point after the defendant was identified, did Sergeant Roberts ask if you could pat him down? A. Yes. Umm, she had obtained his—I believe it was an Iowa driver's license. Umm, she handed that driver's license back to him. I believe she told him he was free to go, umm, but asked for his consent, umm, prior if I could pat him down for anything illegal.
> Q. And what happened—what was the defendant's response? A. He put his hands up in the air. Umm, normally, umm, with, umm, my experience, this is someone consenting to—to a search or a pat-down. Umm, I wanted to clarify.
> Q. So what did you do? A. I asked him if I could check him for anything illegal. Umm, he had previously said to Sergeant Roberts he had nothing illegal on his person.
> Q. Okay. So you asked if you could check his body for anything illegal? A. Correct.
> Q. And what was his response? A. He consented to—to that.

Officer Brand further elaborated on cross-examination:

> Q. [W]hat Sergeant Roberts asked Mr. Frost was if it was okay if you patted him down; correct? A. Correct.
> Q. And he just held up his hands? A. Correct.
> Q. And you said you asked a clarifying question; correct? A. Yes.
> Q. And you asked if it would be okay if you checked his person for anything illegal? A. Correct.
> . . .
> Q. So when you asked Mr. Frost if you could search his person after he had been asked if you could pat him down, he said yes? A. Yes.

While Sergeant Roberts initially only requested consent for a pat-down search, Officer Brand quickly clarified that he sought consent for an expanded search of "anything illegal" on "his body" or "his person." Based upon this testimony, a reasonable person would have understood that Officer Brand asked

for consent to go beyond a pat-down search.  His search into Frost's pockets and the containers found therein was within the consent given for "anything illegal."  Therefore, I would affirm the district court.