# IN THE COURT OF APPEALS OF IOWA

No. 19-1311
Filed July 22, 2020

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**DEBORAH BOLEY,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Dallas County, Virginia Cobb, District Associate Judge.

Deborah Boley appeals her conviction for operating a motor vehicle while intoxicated, first offense. **REVERSED AND REMANDED**.

Robert G. Rehkemper of Gourley, Rehkemper & Lindholm, P.L.C., West Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Israel Kodiaga, Assistant Attorney General, for appellee.

Heard by Vaitheswaran, P.J., and Mullins and Ahlers, JJ.

**VAITHESWARAN, Presiding Judge.**

Deborah Boley appeals her conviction for operating a motor vehicle while intoxicated, first offense. She challenges the district court's denial of her motion to suppress evidence gained after police officers entered her home without a warrant.

## I. Background Facts and Proceedings

Boley slammed into the back of a pickup truck that was stopped for a red light. She left the scene of the accident and headed home. The truck driver followed her, maintaining contact with police along the way, and watched Boley turn into a long residential driveway.

Minutes later, a Waukee police officer arrived at Boley's home, followed by a West Des Moines officer. By the time the officers made it up the driveway, Boley's car was in the garage.

The West Des Moines officer knocked on Boley's front door. Boley opened the door but remained inside. The officer questioned her about her departure from the accident site, then asked for her driver's license, registration, and proof of insurance. Boley responded that the documents were in her glove compartment. At that point, the officer stated, "I'm going to come in with you, though." Boley asked, "In my garage?" The officer responded, "Yes," and Boley said, "Okay." The officer then stated, "I'm going to have [the Waukee officer] come too." Boley again said, "Okay," and allowed the officers in. One of the officers proceeded into what she characterized as the mudroom portion of the home and through a door that led to the garage. The other stood inside the home with her camera scanning the interior, including the living room. The officer in the garage questioned Boley about

her alcohol consumption. Based on signs of impairment, additional Waukee officers were called in to conduct field sobriety tests. The State subsequently charged Boley with operating a motor vehicle while intoxicated, first offense.

Boley moved to suppress evidence gained after the officers entered her home. She asserted, "The warrantless entry into [her] residence violated the 4th Amendment to the United States Constitution and Article 1 Section 8 of the Iowa Constitution" and "[a]ny consent purportedly given by an occupant of the residence was unknowing and involuntary in violation of article I section 8 of the Iowa Constitution." The district court denied the motion, reasoning that "although defendant had a legitimate expectation of privacy in her entryway and garage, there were exigent circumstances and probable cause that justified the minimal invasion of her privacy interest." The court also cited the doctrine of "hot pursuit." The court subsequently tried Boley on the minutes of testimony and found her guilty as charged. Boley appealed following imposition of sentence.

## II. Suppression Ruling

The Fourth Amendment to the United States Constitution states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." U.S. Const. amend. IV. Article I, section 8 of the Iowa Constitution is "*nearly* identical to the Fourth Amendment to the United States Constitution." *State v. Short*, 851 N.W.2d 474, 500–01 (Iowa 2014).

"[T]he 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" *State v. Legg*, 633 N.W.2d 763, 767 (Iowa 2001) (quoting *United States v. U.S. Dist. Ct.*, 407 U.S. 297, 313 (1972)); *see also*

*State v. Kern*, 831 N.W.2d 149, 164 (Iowa 2013) ("[T]he Fourth Amendment and article I, section 8 create a substantial expectation of privacy in the home."). A garage attached to a home and included within the walls surrounding the home "is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *Legg*, 633 N.W.2d at 768 (citations omitted). That standard of protection is "reasonableness." *Id.*

"It is a 'basic principle of Fourth Amendment law' that [all] searches and seizures inside a home without a warrant are presumptively unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *State v. Reinier*, 628 N.W.2d 460, 464 (Iowa 2001) (citations omitted). Recognized exceptions include searches based on consent and probable cause coupled with exigent circumstances. *See State v. Lewis*, 675 N.W.2d 516, 522 (Iowa 2004). "The State has the burden to prove by a preponderance of the evidence that a recognized exception to the warrant requirement applies." *Id.* (citation omitted); *see also State v. Naujoks*, 637 N.W.2d 101, 107–08 (Iowa 2001) (citation omitted). We apply an objective standard to assess the conduct of the officer. *See State v. Jackson*, 878 N.W.2d 422, 429 (Iowa 2016).[1]

The State essentially concedes that neither the probable cause/exigent circumstances exception to the warrant requirement nor the "hot pursuit" doctrine justified the officers' warrantless intrusion into Boley's home. Instead, the State urges us to affirm the district court's suppression ruling under the consent exception to the warrant requirement. Although this ground was not cited by the

---

[1] In light of the objective standard, the officer's concession that she was going to follow Boley into the garage regardless of what Boley said is not dispositive.

district court, we agree with the State that the exception was raised and may be considered as an alternate basis for affirmance. *See Jones v. State*, 938 N.W.2d 1, 2 (Iowa 2020) ("[O]n appeal we can affirm the district court decision on any ground argued below and urged on appeal by the appellee, even if the court below did not reach that issue."); *Fencl v. City of Harpers Ferry*, 620 N.W.2d 808, 811–12 (Iowa 2000) ("If we disagree with the basis for the court's ruling, we may still affirm if there is an alternative ground, raised in the district court and urged on appeal, that can support the court's decision."). We proceed to address the consent exception, reviewing the record de novo. *See State v. Booth-Harris*, 942 N.W.2d 562, 569 (Iowa 2020).

To be valid, a homeowner's consent to a warrantless entry into the home must be "free and voluntary." *Reinier*, 628 N.W.2d at 465. "Consent is considered to be voluntary when it is given without duress or coercion, either express or implied." *Id.* Factors to help determine the validity of the consent encompass "both the circumstances surrounding the consent given and the characteristics of the defendant." *Id.*

The State cites the circumstances surrounding the claimed consent. Specifically, the State argues the officer "talked to Boley in a conversational tone and was courteous to her, she did not raise her voice nor did any officer draw their weapon, and there was no physical force ever exerted or threatened." The State also notes that the officers "did not turn on their emergency lights and sirens—supporting a lack of show of force"; "did not demand that [Boley] must open the door"; and "did not shine their lights at her, nor did they demand that she speak with them."

A video of the encounter supports the State's assertions. However, those assertions only tell part of the story and, in this context, the less important part. The crucial factor is the officer's language. Although the officer did not demand that Boley open the door, the State concedes the officer "used a declarative statement when she informed Boley that she was going to follow her inside the house." The declaration—"I'm going to come in with you, though"—was unequivocal. The officer did not ask whether she could enter and did not suggest Boley had the right to refuse entry.

We recognize "the subject's knowledge of a right to refuse . . . is not a prerequisite for obtaining voluntary consent." *State v. Pals*, 805 N.W.2d 767, 777 (Iowa 2011).[2] But it "is a factor to be taken into account." *Id.* As Boley notes, "No evidence was presented to establish that [she] had prior experience with law enforcement or the judicial system so as to indicate that she knew she had the right to refuse . . . the search." *Cf. State v. Lowe*, 812 N.W.2d 554, 573 (Iowa 2012) (noting the person who came to the door "clearly knew she had the right to refuse consent to search because at all times she refused to consent to a search of her entire mobile home"). Also, if Boley was impaired, as the officer surmised, that would have been a factor diminishing her ability to consent. *See id.* (noting "there is nothing in the record to show that [the person who allowed entry] suffered from any mental abnormality or was otherwise impaired by alcohol or drugs"); *State*

---

[2] The supreme court considered whether to follow the path of other States and adopt a state constitutional "requirement that police advise an individual of his or her right to decline to consent to a search." *See Pals*, 805 N.W.2d at 782. The court "reserved" the issue "for another day." *Id.* Boley asks the court to revisit the question. Even if we had the liberty to do so, we would find it unnecessary to resolve the question.

*v. Garcia*, 461 N.W.2d 460, 465 (Iowa 1990) ("[T]here is no evidence in the record to indicate [the defendant] was physically or emotionally impaired."). Finally, although the officer's body language and, in particular, her position at the bottom of two steps may have suggested a non-coercive demeanor, one of her feet rested firmly on the first step and she leaned against the open outer door throughout the interaction. And when the officer declared her intent to enter, she stepped onto the first and then the second step, conveying "[s]ubtle coercion, in the form of an assertion of authority." *Reinier*, 628 N.W.2d at 468 (citing *United States v. Griffin*, 530 F.2d 739, 742 (7th Cir. 1976)).

Nor could Boley's act of letting the officers in be construed as consent. When the officer said she would be coming in, Boley responded with a question— "Into the garage?"—which a reasonable person could construe as surprise at the request. *Id.* at 467. As for her responses of "Okay," they were nothing more than acquiescence. *See State v. Ochoa*, 792 N.W.2d 260, 292 (Iowa 2010) (citing *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968)) (reasoning that the State does not prove its burden "by showing no more than acquiescence to a claim of lawful authority" and a consent "search conducted in reliance upon an officer's claim of authority cannot be justified if the claim of authority turns out to be invalid"); *State v. Leaton*, 836 N.W.2d 673, 677 (Iowa Ct. App. 2013) ("Consent given to a search must be unequivocal, specific, and freely and intelligently given."); *State v. Carre*, No. 18-1584, 2020 WL 1049823, at *2–3 (Iowa Ct. App. Mar. 4, 2020) (noting district court's rejection of the consent exception where the officer advised the defendant he "would need to follow him in" and the defendant opened the door for the officer).

We conclude Boley's consent to the warrantless entry of the officers into her home was involuntary. *See Reinier*, 628 N.W.2d at 469. If the officers truly wanted Boley's consent, they could have asked. *See United States v. Belt*, 609 Fed. Appx. 745, 759 (4th Cir. 2015) (Wynn, J. dissenting) ("The officers could have asked [the defendant's] son to retrieve [the defendant] from the residence" rather than relying on the minor's "consent" "to gain entry into his home."); *State v. Moninger*, 957 So. 2d 2, 6 (Fla. Dist. Ct. App. 2007) (noting "officers could have sought a search warrant or could have asked for [the defendant's] consent to search" a residence "but they chose neither option").

Anticipating our conclusion, the State argues "any error in Boley's complaint is harmless error." "To establish harmless error when a defendant's constitutional rights have been violated, the State must prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *State v. Effler*, 769 N.W.2d 880, 893 (Iowa 2009) (citation and internal quotations omitted).

As noted, Boley was tried on the minutes of testimony. The district court's dispositional order lacked findings of fact. "Without these findings of fact, we have no way of determining what facts the district court relied upon to find [the defendant] guilty of operating while intoxicated." *State v. Lukins*, 846 N.W.2d 902, 912 (Iowa 2014). Because we do not know whether the court relied on facts discerned following the officers' unconstitutional entry into Boley's home, we reverse the court's suppression ruling and remand for further proceedings. *Id.*

**REVERSED AND REMANDED.**

Mullins, J., concurs; Ahlers, J., concurs specially.

**AHLERS, Judge** (specially concurring).

I concur entirely with the majority's opinion. I write separately for the purpose of reinforcing the principle that courts should not need to patch together conclusions drawn from a number of ambiguous facts in order to find consent. If a law enforcement officer, and ultimately the State, desires to rely on consent as an exception to the warrant requirement, it is not too much to ask to expect the officer to actually ask for and receive that consent in an unequivocal manner.

In fairness, consent does not require any magic words. In fact, consent does not even need to be given verbally, as it may be found by gestures and non-verbal conduct as well. *State v. Reinier*, 628 N.W.2d 460, 467 (Iowa 2001); *see also United States v. Griffin*, 530 F.2d 739, 742 (7th Cir.1976) (leaving a door open and stepping back can be an invitation for officers to enter); *United States v. Turbyfill*, 525 F.2d 57, 59 (8th Cr.1975) (opening door and stepping back constituted implied invitation to enter). However, I believe an officer relying on non-verbal consent or acquiescence to declaratory statements made by the officer does so at the officer's peril. This is because consent to a search must be "unequivocal, specific, and freely and intelligently given." *State v. Howard*, 509 N.W.2d 764, 767 (Iowa 1993). For this reason, ambiguous responses to requests to search are not sufficient. *See, e.g.*, *State v. Harris*, 642 A.2d 1242, 1246–47 (Del. Super. Ct. 1993) (shrugging is an insufficient gesture of consent); *State v. Leaton*, 836 N.W.2d 673, 678 (Iowa Ct. App. 2013) (raising arms is an insufficient gesture of consent). It is the State's burden to prove consent was voluntary, and voluntariness is a question of fact to be determined from the totality of the circumstances. *State v. Lane*, 726 N.W.2d 371, 378 (Iowa 2007). The State is

required to establish consent was voluntary by a preponderance of the evidence. *Reinier*, 628 N.W.2d at 465.

Here, the State asks us to piece together conclusions from various ambiguous observations to find consent. In its attempt to establish consent, the State points to the officers' non-commanding tone of voice, non-confrontational nature, body posture, and body positioning, as well as Boley's actions in saying "okay," stepping back, and waving the officers into the house in response to a declaration that the officers were coming in. While all of these details are legitimate considerations that move toward showing consent under the totality-of-the-circumstances standard, at the end of the day, asking us to rely on a conclusion drawn from a string of ambiguous verbal and non-verbal actions essentially asks us to disregard the requirement that consent be unequivocal. *See Howard*, 509 N.W.2d at 767. Being unwilling to disregard the unequivocality requirement, I join in the decision to reverse the district court's decision denying the motion to suppress and to remand for further proceedings.